UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DAVID FINNEMAN,<br><br>   Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, RISK MANAGEMENT AGENCY, and FEDERAL CROP INSURANCE CORPORATION,<br><br>   Defendants. | 5:23-cv-05034-KES<br><br>DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT |

COMES NOW the Defendants, the United States Department of Agriculture ("USDA"), Risk Management Agency ("RMA"), and Federal Crop Insurance Corporation ("FCIC"), and, in accordance with Federal Rule of Civil Procedure 56, submit the following memorandum in support of its motion for summary judgment in this matter.

**FACTUAL BACKGROUND**

Plaintiff in the above-captioned case has filed this action against the United States Department of Agriculture, the Federal Crop Insurance Corporation ("FCIC") and the Risk Management Agency ("RMA"). Plaintiff seeks judicial review of the agency declining to make a determination whether or not Approved Insurance Provider ("AIP") Producers Agricultural Insurance Company ("Pro Ag") administered Plaintiff's policy in compliance with the program requirements and policy provisions. Plaintiff appears to be seeking to use 706(2)(f) as authority for the judge to step into RMA's shoes and make the noncompliance determination *instead of* RMA or to hold that the determination is unnecessary for seeking damages in the dispute with Pro Ag. Both requests are beyond the scope of the APA. The determination of non-compliance by RMA was requested by Plaintiff to support its position in its ongoing dispute with Pro Ag and

a significant portion of the Complaint imports factual allegations about that dispute which do not have any bearing on the RMA decision.

Plaintiff and Pro Ag arbitrated their dispute over the extent of insurance coverage. The arbitration decision has also been appealed to District Court by Pro Ag based on the arbitrator having exceeded his authority by making policy interpretations.  RMA's decision to decline to make a noncompliance determination is explained in the NAD Director decision being appealed, and in the underlying Hearing Officer decision. (Administrative Record pages 1295-1304 (Hearing Officer) and 1311-1317 (Director Determination)).

As explained below, Plaintiff is generally entitled to seek judicial review of RMA adverse determinations that result in the person receiving less funds than the person believes should have been paid, or not receiving a benefit they believe they were entitled to.  See 7 U.S.C. § 6996 (appeals to NAD), 7 CFR 400, Subpart J esp. 400.90 def. of Adverse Decision and Participant, and 7 CFR Part 11 (NAD).  Plaintiff can appeal the final administrative decision to the United States District Court. See 7 U.S.C. § 6999.  This section provides that "[a] final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5 [the APA]." *Id.*  The final decision for purposes of judicial review is the NAD Director Decision.  7 U.S.C. § 6998(b).  The statute places the burden of proof on the appellant challenging the agency decision.  The appellant must show that the agency decision was "erroneous."  See 7 U.S.C. § 6997(c)(4).

## BACKGROUND OF CROP INSURANCE

The action at issue in Plaintiff's amended complaint was taken by the Federal Crop Insurance Corporation ("FCIC"), acting through the Risk Management Agency ("RMA"), an agency of USDA.  The statutory basis for the existence of FCIC and the Federal crop insurance

program that it provides is the Federal Crop Insurance Act (FCIA), 7 U.S.C. §§ 1501 – 1531.

FCIC is a wholly owned Government corporation within USDA.  *See, e.g.*, 7 C.F.R. § 400.701.

The capital stock of FCIC was wholly subscribed and is wholly held by the United States.  *See*

FCIA § 504 (7 U.S.C. § 1504).  FCIC is considered an agency of USDA.  *See* FCIA § 503 (7

U.S.C. § 1503).

 The crop insurance policy in this case was dispensed subject to the Federal Crop

Insurance Act ("FCIA"), 7 U.S.C. § 1501 *et seq.* In 1938, Congress enacted the Federal Crop

Insurance Act "to promote the national welfare by improving the economic stability of

agriculture through a sound system of crop insurance and providing the means for the research

and experience helpful in devising and establishing such insurance." *Alliance Ins. Co. v. Wilson,*

384 F.3d 547, 549 (8th Cir.2004) (quoting 7 U.S.C. § 1502). Initially, the FCIA permitted only

the Federal Crop Insurance Corporation to issue crop insurance policies and handle claims on

those policies. *Id.* However, in 1980, that changed when Congress amended the FCIA and

authorized the FCIC to allow private insurance companies to sell and service crop insurance

policies to farmers. *Id.*; *see also Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs.,*

*Inc.*, 121 F.3d 630, 633 (11th Cir.1997) (discussing history of the FCIA).

 RMA was created in 1996 to operate and manage certain FCIC duties.  *Midland Farms,*

*LLC v. U.S. Dept. of Agriculture,* 35 F. Supp. 3d 1056, 1058 (D.S.D. 2014) (citing *Am. Growers*

*Ins. Co. v. Fed. Crop Ins. Corp.,* 532 F.3d 797, 798 (8th Cir. 2008)).  The primary regulations

implementing the FCIA are found in 7 C.F.R. Chapter IV.  These regulations, along with the

FCIA and additional program materials discussed below, authorize and regulate the activities of

RMA and FCIC, the approved insurance providers ("AIPs"), and the agricultural producers

utilizing crop insurance.

FCIC, acting through RMA, serves both reinsurance and regulatory functions.  For the vast majority of crop insurance policies, including the policy at issue in this case, the policies are sold to and serviced for producers by private sector AIPs who have entered into a Standard Reinsurance Agreement ("SRA") with FCIC.  *See, e.g.*, 7 C.F.R. § 400.164.  FCIC's primary role in the Federal crop insurance program is to provide reinsurance to AIPs selling and servicing the crop insurance policies and to establish and enforce conditions with which AIPs must comply to maintain status as an AIP and to receive reinsurance from FCIC.  *See* 7 U.S.C. §§ 1506(l), 1508(k); 7 C.F.R. part 400, subpart L.

For most producers, a crop insurance contract is entered into between the producer and the private AIP upon application by the producer for crop insurance covering specified crop(s) in a county for acreage that FCIC designates as insurable.  *See* 7 C.F.R. §§ 457.2(a), 457.2(b).  As a result, most of the interaction in the crop insurance program for producers occurs with AIPs.  Producers purchase policies from a particular AIP, and if a loss occurs, the loss adjustment process and indemnity payment are typically performed by the AIP.  *See* 7 C.F.R. § 457.8 (Basic Provisions, at section 14).

The two major categories of crop insurance policies are yield-based policies and revenue-based policies.  *DL Farms LLC v. United States,* 2023 WL 5721700 at *1 (D.N.D. Sept. 3, 2023)  Yield-based policies insure against production (yield) losses due to natural causes such as drought, excessive moisture, hail, wind, frost/freeze, insects, and disease.  *Id.*  Revenue-based policies insure against revenue losses due to events like market fluctuations.  *Hobbiebrunken v. Vilsack,* 2013 WL 101611, at *1 (D. Kan. Jan. 8, 2013).  Plaintiff purchased a "Whole Farm Revenue Policy" for himself and a separate identical policy for his wholly owned LLC.  Among other actions, Pro Ag combined Plaintiff and his LLC for purposes of determining whether the

revenue of the whole farm fell below the threshold to receive an insurance payment.  The insurance policy at issue here is the 2017 policy.  That policy does not contain a provision providing for an RMA determination whether an AIP is acting in compliance with the policy/program.

## REGULATORY BACKGROUND

Plaintiff's election to benefit from federally reinsured crop insurance programs subjects it to attendant regulatory procedures.  Some of these procedures derive from the concern among the defendant agencies charged with administering crop insurance programs that policies and procedures are interpreted consistently for all program participants and not just based upon considerations raised in a single dispute.  *See generally* 7 C.F.R. § Part 400, subpart X.  Thus, private arbitrators resolving discrete crop-insurance disputes are prohibited from interpreting policies and procedures.  *See id.;* 7 C.F.R. § 457.8, Section 20(a).  Instead, where arbitral resolution requires interpretation of a policy or procedure, the parties must seek interpretations from FCIC (which RMA provides as FCIC's administering agency). *See generally* 7 C.F.R. § Part 400, subpart X.

Legal challenges to RMA's interpretations are subject to mandatory exhaustion procedures. Agency action taken by RMA is appealable to the National Appeals Division (NAD), which facilitates USDA's administrative appellate process. 7 U.S.C. §§ 6991(2), 6996(a)–(b); 7 C.F.R. §§ 11.1, 400.766(b)(6)(iv). Upon appeal to NAD, the administrative judge (a.k.a. hearing officer) reviews the appeal. 7 U.S.C. § 6996(a); 7 C.F.R. § 11.8(b). A party may appeal the administrative judge's decision to the Director of NAD, who can affirm, modify, reverse, or remand for further proceedings. 7 U.S.C. § 6998(a)–(b). The Director's determination is final. *Id.* §§ 6998(b); 6992(d); 7 C.F.R. § 11.6(a)(3). In proceedings relating to interpretation

of crop insurance policies and procedures, NAD's review is limited to RMA's interpretations; NAD does not consider specific facts or make coverage determinations. *See* 7 C.F.R. § 400.767(a). A party can obtain judicial review only after exhausting all NAD procedures and after NAD provides a final determination on the appeal. 7 U.S.C. § 6912(e); 7 C.F.R. §§ 11.13(b), 400.766(b)(5).

## PLAINTIFF LACKS STANDING

Before the Court considers whether the agency's decision is supported by substantial evidence, the Court must consider if it has standing.  "Because standing is an element of federal subject matter jurisdiction, it may be raised as an issue at any time."  *See Sioux Falls Cable Television v. State of South Dakota,* 838 F.2d 249, 251 (8th Cir.1988) (citing Fed. R. Civ. P. 12(h)(3)).  If the Court does not have standing to proceed, the matter should be dismissed pursuant to Fed. R. Civ. P. 12(h)(3).  The doctrine of constitutional standing—an essential aspect of the case-or-controversy requirement of Article III, Section 2—requires that "a plaintiff may not invoke federal-court jurisdiction unless he can show 'a personal stake in the outcome of the controversy.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

It is well-settled that a plaintiff must have standing to commence a suit in federal court. At its "irreducible constitutional minimum," the doctrine requires satisfaction of three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, (2) a causal connection between the injury and defendant's challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

It is well-settled that a party cannot demonstrate a cognizable injury-in-fact unless it has

both a right to sue (a cause of action) and an actual injury. This bedrock principle was articulated in *Lujan*, which held that Defenders of Wildlife lacked standing because it did not have a cognizable injury, notwithstanding that it sued under a statute permitting "'any person [to] commence a civil suit … to enjoin any person … who is alleged to be in violation of'" the law. *Id.* at 558 (quoting 16 U.S.C. § 1540(g)). The Supreme Court recently reiterated that it has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (quoting *Spokeo v. Robinson*, 578 U.S. 330, 341 (2016)); *see also id.* ("Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking powers to transform something that is not remotely harmful into something that is." (quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018))). "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.*; *see also Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1239 (11th Cir. 2022) (en banc) (dismissing claim for lack of standing although a cause of action existed). This is not a merely academic prescription—"the concrete-harm requirement is essential to the Constitution's separation of powers." *TransUnion*, 141 S. Ct. at 2207. Accordingly, the fact that there is a statutory right to appeal the NAD decision does not permit standing for the injuries which Plaintiff is alleging.

When a plaintiff's injuries depend on the actions of third parties, then he or she shoulders a much heavier burden in demonstrating traceability and redressability. In such an instance,

"standing is not precluded, but it is ordinarily 'substantially more difficult' to establish."
*Summers v. Earth Island Institute*, 555 U.S. 488, 493 (quoting *Lujan*, 504 U.S. at 562). This is
because "[t]he existence of one or more of the essential elements of standing 'depends on the
unfettered choices made by independent actors not before the courts and whose exercise of broad
and legitimate discretion the courts cannot presume either to control or to predict,'" and the
plaintiff must therefore "adduce facts showing that those choices have been or will be made in
such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562.
Courts will nonetheless find standing if the plaintiff's theory "does not rest on mere speculation
about the decisions of third parties" but "relies instead on the predictable effect of Government
action on the decisions of third parties." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566
(2019).

Plaintiff has not articulated a cognizable injury in fact required to sustain federal subject-
matter jurisdiction under Article III; therefore, this Court does not have judgment matter
jurisdiction to proceed and judgment should be entered in Defendants' favor.   Plaintiff alleged
four grounds of alleged injury based upon the Agency's conclusion that it could not issue a non-
compliance decision. *See* Amended Complaint at t¶ 46(a)-(d).  The grounds vary as to how the
Agency allegedly erred, but all four grounds all allege the same injury - that the "failure [to issue
the noncompliance decision] resulted in the insured receiving a payment in an amount that is less
than the amount to which the inured was entitled." *Id.*  First, plaintiff cannot establish standing
for this alleged injury, in part, because any guesses as to how his other court case involving AIP,
Pro Ag, might conclude is speculative.  Also, Plaintiff prevailed when appealing the arbitration
decision; accordingly, Plaintiff's injury is as the appellee is also speculative at best.  This
uncertainty renders Plaintiff's alleged injury too speculative to support jurisdiction.

Second, Plaintiff cannot establish standing because there is no casual connection. Finneman's request for an indemnity claim was denied by the AIP without any involvement relating to the agency, and the agency action denying indemnity occurred before the alleged injury by the Agency.  Also, Plaintiff's alleged Article III injury is derived from Pro Ag's denial of coverage.  Pro Ag's coverage denial is not traceable to defendants for two reasons.  First, defendants have no control over Prog Ag, no privity with Plaintiff's policy, and no role in the coverage decisions.  Second, as noted already, Pro Ag's denial occurred before the agency action at issue here.  There is also no casual connection to the Agency for the alleged injury and the Court does have standing to proceed.  Judgment in favor of the Defendants is appropriate pursuant to Fed. R. Civ. P. 12(h)(3).

### ADMINISTRATIVE PROCEDURES ACT (APA) STANDARD OF REVIEW

Should the Court find that Article III standing is present, pursuant to the standards of review under the APA, judgment should still be entered in Defendants favor.  Title 5 of the United States Code section 706 empowers the *reviewing* court (1)  "to compel agency action unlawfully withheld or unreasonably delayed" or (2) to "hold unlawful and set aside agency action, findings and conclusions" as specified in subparts (A) through (E) as applicable. It does not empower the Court to substitute itself for the agency and make findings itself.  Instead, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985)* (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402 (1971) (overruled on other grounds)).

Plaintiff appears to be arguing here that the matter should be set aside under sub-(A), (E) or (F) of § 706.  *See* Amended Complaint, ¶ 46.  However, Plaintiff's prayer for is essentially

seeking relief pursuant to § 706(F) by arguing judgment based upon facts that were not reviewed below.  *See id.*  The applicable sections cited by Plaintiff state that in order to set aside an agency action, finding or conclusion, the reviewing court must find that the said agency decision was, either

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> …
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706(2).  These "scope of review" provisions of the APA are cumulative.  *Association of Data Processing v. Board of Governors*, 745 F.2d 677, 683 (D.C. Cir. 1984) (In *Olenhouse v. Commodity Credit Corporation*, 42 F.3d 1560, 1575 (10th Cir. 1994), the Court of Appeals for the Tenth Circuit adopted the analysis for review of agency action under the APA articulated by then-Judge Scalia in *Association of Data Processing v. Board of Governors*, 745 F.2d 677, 683 (D.C. Cir. 1984).)

Although Plaintiff also pleads (A) and (F), the review of a record of a NAD hearing should be subject to provision (E).  A final NAD decision falls into the category of decisions to which § 706(2)(E) applies, the substantial evidence standard is applicable to a review of this decision.  *Olenhouse v. Commodity Credit Corporation*, 42 F.3d 1560, 1575-1576 (10th Cir. 1994); *Production Marketing v. Commodity Credit Corporation*, 108 F.Supp.2d 1294, 1298-1299 (M.D. Ala. 2000).

Separate from the "arbitrary and capricious" standard for informal agency action, the APA provides a "substantial evidence" standard for courts reviewing factual determinations in formal agency actions. The APA mandates that agency findings and conclusions be supported by "substantial evidence," 5 U.S.C. § 706(2)(E), whenever an agency is required to act "on the record after opportunity for an agency hearing," (*i.e.*, pursuant to formal rulemaking or adjudicatory procedures). *See, e.g.,* 5 U.S.C. §§ 553(c), 554(a), 556(d), 557.

The "substantial evidence" standard is understood to be "somewhat less strict," and hence slightly less deferential, than the clearly erroneous standard for appellate review of trial court proceedings, but the difference is "subtle" and rarely significant. *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999).   Under the substantial evidence standard, an agency's fact-based conclusion must be sustained unless no reasonable factfinder could have reached that conclusion based on the administrative record. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). In other words, the evidence in the administrative record that supports the agency's factual conclusion is sufficient if it would justify, in a jury trial, a refusal to take a factual decision away from the jury. *See Ill. Cent. R.R. v. Norfolk & W. Ry.*, 385 U.S. 57, 66 (1966) (citations omitted).

Regarding the § 706(2)(E) substantial evidence standard, evidence is substantial in an APA sense if it is "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn is one of fact."  *Olenhouse v. Commodity Credit Corporation*, 42 F.3d at 1574, 1575 (quoting *Association of Data Processing v. Board of Governors*, 745 F.2d at 683 which quoted *Illinois Central R.R. v. Norfolk & Western Ry.*, 385 U.S. 57, 66 (1966)). Under the substantial evidence standard of review, a reviewing court's inquiry is "whether the agency's decision is based upon 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Foust v. Lujan*, 942 F.2d 712, 714 (10th Cir. 1991), *cert.*

*denied*, 503 U.S. 984 (1992) (quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607,

620 (1966)).  Substantial evidence "is something more than a mere scintilla but something less

than the weight of the evidence." *Id.*  Furthermore, "[t]he substantiality of evidence must take

into account whatever in the record fairly detracts from its weight." *Id.*  However, "the

possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence." *National

Cattlemen's Association v. United States E.P.A.*, 773 F.2d 268, 271 (10th Cir. 1985).

      As to the 706(2)(E) request for review by Plaintiff, "It is well settled that judicial review

of agency action is normally confined to the full administrative record before the agency at the

time the decision was made. The focal point for judicial review should be the administrative

record already in existence, not some new record completed initially in the reviewing court."

*Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981) (citations

omitted).  "In addition, de novo review is only allowed under [section 706] in two limited

instances: where the agency action is adjudicatory in nature and the fact finding procedures are

inadequate; or where issues that were not before the agency are raised in a proceeding to enforce

nonadjudicatory agency action." *Id.* at 284-85 (citing  Camp v. Pitts, supra, 411 U.S. at 142, 93

S. Ct. at 1244;  Asarco, Inc. v. U.S.E.P.A., 616 F.2d 1153, 1158 (9th Cir. 1980);  Doraiswamy v.

Secretary of Labor, supra, 555 F.2d at 839 n.39.).  Here we are dealing with an adjudicatory

action and there is no indication that the fact finding procedures were inadequate.  *See, e.g.,

Environmental Defense Fund, Inc.*, 657 F.2d at 286, n. 36 (Once the record was considered to be

sufficient and further explanation of agency officials was unnecessary, it was noted that de novo

review was not appropriate.); *McInnis v. Weinberger* 388 F. Supp. 381, 389 (D.C. Mass. 1975)

(noting § 706(2)(E) applies in only "other unusual circumstances" and finding de novo review inappropriate), affirmed 530 F.2d 55 (1st Cir. 1976).

However, because the arbitrary and capricious standard found in § 706(2)(A) is the "catch all" standard, courts have also considered it applicable.  *Olenhouse*, 42 F.3d at 1574-1575 and fn. 25; *Association of Data Processing*, 745 F.2d at 683. Courts have questioned whether there is any meaningful distinction between those two standards when used to determine the adequacy of factual support for an agency's actions. *See Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).  Even though there are two different review standards to apply in reviewing this agency decisions, there is "no substantive difference" between them.  *Association of Data Processing v. Board of Governors*, 745 F.2d at 683.  The distinctions between these two standards are "largely semantic."  *Id.*

As Justice Scalia, while still a member of the D.C. Circuit, explained, substantial evidence review in formal proceedings is no more demanding than arbitrary-or-capricious review of such findings in informal proceedings.  *Ass'n of Data Processing Service Organizations (ADPSO), Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984). Then-Judge Scalia, writing for the court, held that "in their application to the requirement of factual support, the substantial evidence standard and the arbitrary and capricious test are one and the same." *Id.* As conceived by the *ADPSO* court, the "substantial evidence standard" applicable to formal administrative proceedings is "only a specific application" of the arbitrary and capricious standard that applies generally to all administrative proceedings. *Id.*

When a court reviews an agency's action under the APA, it will not set that action aside unless the challenger can show the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Missouri ex rel. Bailey v. United States Dep't of Interior,*

*Bureau of Reclamation*, 73 F.4th 570, 576 (8th Cir. 2023) (quoting *Sierra Club v. Kimball*, 623

F.3d 549 at 559 (in turn quoting 5 U.S.C. § 706(2)(A) and citing to *South Dakota v. U.S. Dep't of*

*Interior*, 423 F.3d 790, 800 (8th Cir. 2005) (burden of proof rests with the plaintiff)).

> An agency action is arbitrary and capricious if:
> the agency has relied on factors which Congress has not intended it to consider,
> entirely failed to consider an important aspect of the problem, offered an
> explanation for its decision that runs counter to the evidence before the agency, or
> is so implausible that it could not be ascribed to a difference in view or the
> product of agency expertise. *Cent. S.D. Co-op Grazing Dist. v. Sec'y of U.S. Dep't*
> *of Agric.*, 266 F.3d 889, 894 (8th Cir. 2001) (quoting *Motor Vehicle Mfrs. Ass'n v.*
> *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L.Ed.2d 443
> (1983)).

*Missouri ex rel. Bailey v. United States Dep't of Interior, Bureau of Reclamation*, 73 F.4th 570,

576–77 (8th Cir. 2023).  The Eighth Circuit draws upon the standard from *Motor Vehicle*

*Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,* also known as the "hard

look" standard where a court may set aside agency action as "arbitrary or capricious" where the

agency action: (1) relied on factors which Congress has not intended it to consider; (2) entirely

failed to consider an important aspect of the problem; (3) offered an explanation for its decision

that runs counter to the evidence before the agency; or, (4) offered an explanation so implausible

that it could not be ascribed to a difference in view or the product of agency expertise. *See id.* at

43.

    "When we apply an agency regulation, a court should accord substantial deference to an

agency's interpretation of its own regulation, unless the regulation violates the Constitution or a

federal statute, or unless the interpretation is plainly erroneous or inconsistent with

the regulation." (internal quotations omitted) (quoting *Coalition for Fair & Equitable Reg., 297*

*F.3d 771, 778* (8th Cir. 2002)).

Review under the "arbitrary and capricious" standard is "searching and careful," but "narrow." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 377-78 (1989). *See also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). The ultimate question under this narrow standard of review is whether the agency's action was reasonable. *FCC v. Fox Television Stations*, 556 U.S. 502, 514-15 (2009). Even if a court were to find that an agency's decision is "less than ideal clarity." Courts should uphold a "decision [of] less than ideal clarity… if the agency's path may reasonably be discerned." *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004). *See also Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). The question is whether the agency's decision is "within the bounds of reasoned decisionmaking." *Balt. Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983).  In addition, an agency's explanation need not be encyclopedically thorough. "[A] court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019).

## DISTRICT COURT STANDARD OF REVIEW
## UNDER THE ADMINISTRATIVE PROCEDURES ACT

The D.C. Circuit has clearly set forth "the role the district court plays when it reviews agency action" under the APA. *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993). "The district court sits as an appellate tribunal, not as a court authorized to determine in a trial-type proceeding whether the [agency's] study was factually flawed." *Id.* "The entire case on review is a question of law, and only a question of law." *Id.* at 1226. Because of the nature of APA review, a court may decide such a case on a motion to dismiss. *Id.* ("[T]he district court can consult the [administrative] record [on a Rule 12(b)(6) motion to dismiss] to answer the legal question before the court—in this case whether the agency adhered to the

standards of decisionmaking required by the APA."); *see also Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1564, 1579-80 (10th Cir. 1994) (holding district court reviewing agency action acts as a court of appeal and "it is improper for a district court to use methods and procedures designed for trial"; also observing that traditional motion for summary judgment, is, "at its core . . . inconsistent with the standards for judicial review of agency action under the APA" because it "invites (even requires) the reviewing court to rely on evidence outside the administrative record").  Whether the arguments are addressed in a motion to dismiss or a motion for summary judgment, the legal standards are the same. *Marshall Cnty. Health Care Auth.*, 988 F.2d at 1222-23 ("[W]hen a district court is reviewing agency action . . . the legal questions raised by a 12(b)(6) motion and a motion for summary judgment are the same.").  The closed record is the sole permissible source for fact finding by the agency and, in turn, the sole record for judicial review. 5 U.S.C. § 706.

Plaintiff appears to be trying to skip over the actual RMA decision—whether it was required to make a noncompliance determination.  The question before the Court is whether NAD erred in affirming that RMA was not required to make a noncompliance decision.  That is the only issue before the Court.  The standard of review of the APA does not empower the District Court to assess Pro Ag's administration of the 2017 Whole Farm Revenue policy or to waive the requirement for a noncompliance determination in order to seek punitive damages and other state-law remedies in Plaintiff's other district court case, 5:22-cv-05062-KES (D.S.D.). *See* First Amended Complaint at 12 (prayer for relief).  These issues were not considered by the Director and are outside the scope of the Court's review.

**NATIONAL APPEALS DISIVISION DIRECTOR'S REVIEW
SATIFIES 5 U.S.C. § 706(2)(E) AND IN THE ALTERNATIVE 5 U.S.C. § 706(2)(A)**

The appeal before the United States Department of Agriculture, Office of the Secretary,

National Appeals Division, for a Director Review Determination, involved a dispute between

Plaintiff, David Finneman (Appellant) and the Rick Management Agency (RMA) based on

RMA's refusal to determine whether Finneman's insurance provider (Pro Ag) "failed to comply

with the crop insurance policy or agency rules, resulting in a lower payment to Appellant for the

2017 crop year."  AR 001312; Doc. 28-2, Part 9 at 68.

> The Director identified the issue to be determined as:
>
> The issue is whether RMA properly declined to issue a determination that the AIP failed to comply with Appellant's 20 17 policy or with agency rules. To resolve this issue, I must decide whether RMA properly applied its regulations governing non-compliance determinations for crop insurance policies, specifically for 2017 Whole Farm Revenue Protection policies. *See generally* Common Crop Insurance Regulations at 7 C.F.R. Part 457.

AR 001312; Doc. 28-2, Part 9 at 68.  The Director then reiterated the history as described in the

factual background above which is helpful to understanding how the parties have arrived before

this Court.  AR 001313-14; Doc. 28-2, Part 9 at 69-70 ("Background").

Next, the Director considered applicable legal authority.  In discussing the applicable

legal authority, the Director noted that "federal crop insurance laws and regulations preempt state

and local laws and regulations. *See* 7 C.F.R. § 400.352; *see also* U.S. Const. art. VI, cl. 2

(Supremacy Clause)."  AR  001314; Doc. 28-2, Part 9 at 70.  He also pointed out that

> state or local governmental entities or non-governmental entities may not levy 'fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against [insurance] companies [or] employees of companies including agents and loss adjustors.' 7 C.F.R. § 400.352(b)(4).  [Unless,] [s]uch judgments or damages, however, are allowed if 'specifically authorized' by RMA. 7 C.F.R. § 400.352(a).

AR 001314; Doc. 28-2, Part 9 at 70.

The Director went on to emphasize that "Section 20(i)" of the "'Common Crop Insurance Policy Basic Provisions'" is the applicable mechanism that provides for a non-compliance determination.  He set forth the language of section 20(i):

> In a judicial review only, you may recover attorney's fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled.  7 C.F .R. § 457.8 (2017).

AR 001314; Doc. 28-2, Part 9 at 70.  Next, the Director stated that the 2017 Whole Farm Revenue Protection pilot policy's Basic Provision had no Section 20(i).  AR 001314; Doc. 28-2, Part 9 at 70 (citing *See* FCIC's Whole Farm Revenue Protection Pilot Policy, 17-0076 WFRP-Pilot, https://legacy.rma.usda.gov/policies/wfrp/2017/17-0076); see also AR 000123-124; Doc. 25, Part 1 at 129-130 (copy of Finneman's 2017 contract at section 33 dealing with "Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review" does not include subpart (j)).

After the Director set forth the authority on which his conclusions was based he reasoned that "[t]he Administrative Judge determined RMA had no authority under the 2017 Whole Farm Revenue Protection (WFRP) pilot policy to issue a non-compliance determination allowing Appellant to seek extracontractual damages from the AIP."  AR 001314 (Doc. 28-2, Part 9, 70). The Director relied on the following reasoning set forth by the administrative judge:

> Despite what other policies might have allowed at the time, the Appellant's 2017 WFRP pilot policy did not include section 20(i) and otherwise did not contain an equivalent clause allowing producers to pursue damages with RMA's blessing, meaning the Appellant's insurance contract did not permit the Appellant to obtain from RMA an AIP non-compliance determination. As RMA demonstrated, the equivalent provision first appeared in the WFRP Basic Provisions in 2019.
>
> Regardless of what other insurance contracts might have provided for in 2017, and despite what later years' iterations of the WFRP pilot policy included, the

> Appellant's insurance contract included only the 2017 WFRP Basic Provisions, which did not provide for attorney fees and other damages during judicial review. The Appellant's insurance contract generally limited awards to "the amount of insured revenue established or which should have been established under the policy," plus allowable interest.

AR 001314-001315 (Doc. 28-2, Part 9, 70-71) (citing Appeal Determination at 5 (internal citations omitted)); *see also* AR 001299 (Doc. 28-2, Part 9, at 55) (Administrative Judge's decision at 5).

The Director also rejected Finneman's argument that "the entire statutory scheme" for federal crop reinsurance requires NAD to apply regulation 7 C.F.R. § 400.352 (b)(4) even in the absence of a Section 20(i) in the 2017 policy.  AR 001315 (Doc. 28-2, Part 9, at 71).  The Director concluded that he agreed with the conclusion of the Administrative Judge "that NAD cannot insert a provision into a crop insurance contract that is not there."  AR 001315 (Doc. 28-2, Part 9, at 71) (also citing to additional language from the Administrative Judge's decision). The Administrative Judge in concluding that NAD could not insert a provision into the crop insurance contract stated:

> the regulation at 7 C.F.R. § 400.176(b) allowed the option for certain reinsured policies to give rise to damages if RMA consented, but RMA did not include such terms in the 2017 WFRP pilot policy. The legal maxim "*expressio unius est exclusio alterius*" is an interpretative maxim meaning that if certain things are specified in a law, contract, or will, other things are implicitly excluded. The legal maxim applies to contracts, just as it does to laws.  *E.g., Hawkins v. U.S.,* 96 U.S. 689, 697–698 (1877); *In re Lares,* 188 F.3 1166, 1169 (9th Cir.1999); *American Well Works v. Rivers,* 36 F. 880, 881 (D. La. 1888); *Broad Street Energy Co. v. Endeavor Ohio LLC,* 975 F. Supp. 2d 878, 890 (S.D. Ohio 2013); *see also Wilson v. Maynard,* 961 N.W.2d 596, 604 (Sup. Ct. S.D. 2021) (courts in South Dakota typically "will not rewrite a contract or covenant or add to its language"). Moreover, where the drafter excludes a thing by omission, "a court may not in the process of construction supply the omission." *Cf. DeSisto College, Inc. v. Town of Howey-in-the-Hills,* 706 F. Supp. 1479 (M.D. Fla. 1989).

AR 001300 (Doc. 28-2, Part 9 at 56).

The Director also quoted the following language from the Administrative Judge's decision:

> The Appellant provided no evidence of fraud, mistake, or misapprehension that would warrant rewriting the contract. Moreover, the 2017 WFRP pilot policy is unambiguous-the Policy does not expressly provide for producers to obtain noncompliance determinations from RMA. *See* 2017 WFRP Basic Provisions § 33. Ultimately, the Policy says what it means, and it means what it says. Therefore, RMA properly declined to issue a non-compliance determination allowing the Appellant to pursue extracontractual damages against Interested Party.

AR 001315 (Doc. 28-2, Part 9, at 71) (citing Appeal Determination at 6, AR 001300 (Doc. 28-2, Part 9 at 56).

Whether the Court applies the standard set forth in § 706(2)(A) or (E), judgment should be entered in favor of the Defendants because the evidence was substantial in an APA sense if "the agency's decision is based upon 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Foust v. Lujan*, 942 F.2d 712, 714 (10th Cir. 1991), *cert. denied*, 503 U.S. 984 (1992) (quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966)). *See also Syverson v. U.S. Dept. of Agriculture,* 601 F.3d 793, 800 (8th Cir. 2010) ("Substantial evidence is a deferential review standard, requiring only the presence of 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

The Supremacy Clause enables Congress, in the exercise of its legislative authority, to preempt state law. *Louisiana Public Serv. Comm'n v. FCC,* 476 U.S. 355, 368 (1986). Federal regulations, similar to federal statutes, may also preempt state law, if the regulations are intended to have preemptive effect, and the agency is acting within the scope of authority delegated to it by Congress. *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699 (1984); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153–54 (1982). When Congress created the federal crop insurance program, it expressly authorized the FCIC to enact policy provisions and other

regulation that would preempt conflicting state laws.  *See* 7 U.S.C. § 1506(l) ("State and local laws or rules shall not apply to contracts, agreements or regulations of the [FCIC] or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements or regulations."); 7 U.S.C. § 1502(b)(5) (stating "Corporation" as "the Federal Crop Insurance Corporation"); 7 U.S.C. § 1506(o) (FCIC power to issue regulations); *J.O.C. Farms, L.L.C. v. Fireman's Fund Insurance Company,* 737 Fed. Appx. 652, 655 (4th Cir. 2018) (discussing revisions to 7 C.F.R. §§ 457.8 and 400.176(b) in 2004).

Based upon the Supremacy clause and the applicable regulations enacted pursuant to the FCIA a "reasonable mind might accept" that preemption applies.  Other courts have applied preemption to the federal crop insurance contracts.  *See, e.g., J.O.C. Farms, L.L.C. v. Fireman's Fund Insurance Company,* 737 Fed. Appx. 652, 656 (4th Cir. 2018).  Also, based upon the administrative record, "a reasonable mind  might accept" that Finneman's 2017 crop insurance contract cannot be rewritten.  The fourth sentence of the applicable contract between Finneman and Pro Ag states, "The provisions of the policy may not be waived or varied in any way by us, our insurance agent or any other contractor or employee of ours, or any employee of the United States Department of Agriculture (USDA)."  AR 000086; (Doc. 25, Part 1, at 92).

Plaintiff does not contest that the applicable crop insurance contract did not contain Section 20(i) language in the 2017 policy.  *See* AR 000125; Doc. 25, Part 1 at 131 (applicable policy did not contain section (j) in section 33).   Also, the authority relied on by the Administrative Law Judge cited above (AR 001033) for the conclusion that the contract could not be rewritten, a conclusion the Director noted he agreed with (AR 001315), is also sufficient authority to provide substantial evidence in support of the Director's decision.  Based upon

review of the evidence, "a reasonable mind might accept" that the 2017 WFRP Policy, on which Plaintiff's arbitration decision was based, does not have a contract provision that authorities the Deputy Administrator of Compliance (DAC) to determine if the Producers Agriculture Insurance Company failed to comply with the terms of the 2017 WFRP Policy and applicable Federal Crop Insurance Corporation procedures, that resulted in Finneman allegedly receiving a payment in an amount less than he was entitled to receive.  RMA has acknowledged in part, in a memorandum dated August 30, 2018, that based upon consultation with stakeholders, it modified the WFRP plan of insurance for 2019 and subsequent years to add "language to Section 33 regarding recovery of certain fees and expanses during judicial review."  AR 000185-000186; Doc. 25, Part 1 at 191-192.  This change provides support to the Director's decision that without the contract language the agency could not provide the policy compliance review that Finneman was requesting.

When relying on the regulations, a "reasonable mind might accept" that the Director's conclusion that without the specific language in the contract authorizing review by RMA that review is not allowed.  Relying on the plain language, the Director noted, "State or local governmental entities or nongovernmental entities are specifically prohibited from . . . Levy[ing] fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors," among several other specific prohibitions. 7 C.F.R. § 400.352(b)(4).  However, such judgments or damages are allowed if "specifically authorized" by RMA. 7 C.F.R. § 400.352(a).  The regulation at 7 C.F.R. 400.352 declares the supremacy of Federal laws and regulations and disallows judgments and damages unless "specifically authorized" by RMA. 7 C.F.R. § 400.352(a)–(b).  The regulation at 7 C.F.R. § 400.176(b) allowed the option for certain reinsured

policies to give rise to damages if RMA consented, but the conclusion that there was no consent here is based upon substantial evidence.

Appellant's 2016 WFRP policy did not call on RMA to determine whether Interested Party failed to comply and whether such non-compliance caused the Appellant to receive a lower payment. See 2016 WFRP Basic Provisions § 33. Accordingly, given the lack of the provision in the policy permitting review by RMA, a "reasonable mind would accept" the Director's conclusion that the language of the policy stands without any evidence of fraud, mistake, or misapprehension that would warrant rewriting the contract. Based upon the foregoing, there is substantial evidence to support the Director's decision, and judgment as a matter of law in the Defendants' favor is appropriate.

As discussed above, there is "no substantive difference" between the standards at § 706(2)(A) and § 706(2)(E). *Association of Data Processing v. Board of Governors*, 745 F.2d at 683. The distinctions between these two standards are "largely semantic." *Id*. According to the Eighth Circuit, an agency action is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Cent. S.D. Co-op Grazing Dist.*, 266 F.3d at 894 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). The record before the Court does not establish that any of the aforementioned four scenarios are present. Accordingly, should the Court conclude the matter should be evaluated pursuant to § 706(2)(A), the agency's action was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Under either standard of review of the APA, judgment in favor of the Defendants is appropriate.

Dated this 24th day of March, 2024.

ALISON J. RAMSDELL
UNITED STATES ATTORNEY

/s/ Stephanie C. Bengford

_____

STEPHANIE C. BENGFORD
Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
(605) 330-4400
Stephanie.Bengford@usdoj.gov